### 11491. HINES, agent, *v.* EVANS.

1. Under the rule in force in this State, unless wrongful acts of negligence be wilful or wanton, they do not authorize the recovery of damages where the resulting injury consists only in shock, fright, or mental pain and suffering. *Chapman* v. *Western Union Tel. Co.,* 88 *Ga.* 763 (15 S. E. 901, 17 L. R. A. 430, 30 Am. St. Rep. 183); *Cole* v. *Western Union Tel. Co.,* 23 *Ga. App.* 479 (2) (98 S. E. 407); *Dunn* v. *Western Union Tel. Co.,* 2 *Ga. App.* 458 (3) (59 S. E. 189). But, even in the absence of wilfulness or wantonness, mere wrongful acts of negligence will authorize a recovery where the resulting fright, shock, or mental suffering is attended with actual immediate physical injury, or where from the nature of the fright or mental suffering there naturally follows as a direct consequence physical or mental impairment; and in either of such events the fright or mental suffering can itself be considered, together with the accompanying physical injury or such resulting physical or mental impairment, as an element of damage. *Williamson* v. *Central of Ga. Ry. Co.,* 127 *Ga.* 125 (56 S. E. 119).

2. The court did not err in allowing the amendment to the plaintiff's petition or in overruling the defendant's demurrer.

DECIDED NOVEMBER 11, 1920.

Action for damages; from city court of Valdosta — Judge Cranford. April 12, 1920.

Mrs. Leone Evans, by W. A. Evans as next friend, brought suit against Walker D. Hines, director-general of railroads (described by amendment as agent of the director-general), in control of and operating the Atlantic Coast Line Railroad, to recover damages for personal injuries. She alleged substantially as follows: On April 1, 1919, Mrs. Evans with her husband was, with the permission and consent of the defendant, and under and by virtue of his authority, living near Ousley station, Lowndes county, in a house just west of the east end of the passing track at the station and approximately 40 feet north of the center of the main line. Shortly before that date she gave birth to a child, and she was still weak and nervous, although she had sufficiently recovered to be up and attending to the usual duties of her household. The defendant had allowed one of its freight-cars to become defective and unsafe for operation, in that one of the arch-bars thereon had become loose and dropped down much below its normal or proper position, and, as a freight-train carrying this car on the said date approached the said station, the said defective arch-bar caught the passing track, and as a result a serious wreck ensued. The freight-train at that time was being operated at a rate of speed of from 35 to 40 miles per hour, and a number of the cars of the train were derailed and were thrown about and piled upon each other with great force and violence, and one of them was thrown or fell over against the house in which the plaintiff was living, with such force and violence as to knock the house off its pillars and demolish the chimney, and to cause other injury and damage thereto. Paragraph 9 alleged: "Petitioner was in said house at the time of said wreck, and at the time said car struck and demolished it as aforesaid, and as a result thereof was thrown about and severely shocked, and she alleges that the shock then received by her when said car struck and demolished said house as aforesaid caused the serious mental and physical condition hereinafter described." Paragraph 10 alleged that "as a result of said shock and injury the mind of petitioner almost instantly became unbalanced, and shortly thereafter, although she had the best of care and attention and medical

skill, her mental condition gradually grew worse until she reached a state of total insanity, and it became necessary, by a judgment of the court, to commit her to the State insane asylum." The acts of negligence charged are as follows: (*a*) the said train was being operated at said point and over said passing track at a reckless and dangerous rate of speed; (*b*) the said arch-bar had been permitted to work loose and drop down to such an extent that it caught the said passing track and derailed said car; (*c*) the said car was being carried and operated at said time in said train, notwithstanding the said arch-bar was in an unsafe condition. It was alleged that the negligence of the defendant, as set out, was the sole and proximate cause of her injury.

The defendant demurred as follows: "(1) The petition does not set forth a cause of action against the defendant; (2) the petition is brought to recover damages for the impairment of the mind of the plaintiff, resulting from mental shock or fright, and the petition shows by the facts alleged that no physical injury attended the cause for fright, and the fright was not of such a nature as to produce physical or mental impairment, directly and naturally resulting from the negligent acts alleged in the petition; (3) the petition shows by the facts alleged that there was no actual immediate personal injury to the plaintiff, and the petition fails to show that the impairment of the mind of the plaintiff was the natural and proximate result of the fright or shock, or that the defendant could or should have known that the negligent acts alleged in the petition would with reasonable certainty cause the results complained of." Upon the hearing of the demurrer the plaintiff offered an amendment to paragraph 9 of the petition, amplifying the allegations as to the character and extent of her injury, the paragraph as finally amended being made to read as follows: "That your petitioner was in said house at the time of said wreck, and at the time said car struck and demolished it as aforesaid, and as a result thereof was thrown about and upon and against the floor and severely shocked, and she alleges that the shock then received by her, when said car struck and demolished said house as aforesaid, caused and produced great bodily and mental pain and suffering, and caused the serious mental and physical condition hereinafter described." The amendment was allowed over the defendant's objection that it sought to set forth

a new cause of action. The demurrer was then overruled. Error is assigned on the allowance of this amendment and the overruling of the demurrer.

*Patterson & Copeland, Bennet & Branch,* for plaintiff in error.

*E. K. Wilcox, Whitaker & Dukes,* contra.

JENKINS, P. J. (After stating the foregoing facts.) 1. The petition in this case does not allege wantonness on the defendant's part. If, therefore, as claimed in the several grounds of the demurrer, the original petition should be construed as an action to recover damages arising from mere negligence causing fright, shock, and mental suffering, but which was neither attended with physical injury nor followed by physical or mental impairment as a direct and natural consequence, then it would fail to set forth a cause of action and should have been dismissed. Under such a construction it could not even be aided by amendment, since not even a defectively stated cause of action would be shown to amend by. *Davis* v. *Muscogee Mfg. Co.,* 106 *Ga.* 126 (32 S. E. 30); *Burton* v. *Wadley Southern R. Co.,* 25 *Ga. App.* 599 (103 S. E. 881, 882). Taking the term "physical injury" as being synonymous with "bodily harm" or "bodily hurt," while the original petition shows that the demolition of the house caused the plaintiff to be "thrown about," and that "said shock and *injury*" almost instantly caused her mind to become unbalanced, it is true that the nature, extent, and character of the injury is in no wise set forth and described, and while the amendment elaborates as to the manner in which the injury was occasioned, in that it says she was thrown about, upon, and against the floor and that the shock thus received caused "great bodily and mental pain and suffering," even the amendment entirely fails to set forth anything at all as to the nature, character, and extent of the bodily hurt. The defendant's counsel contend that there is therefore nothing in the petition, even as amended, which could authorize a recovery for physical injuries.

While, as against a demurrer pointing out that the nature and extent of such alleged injuries were not set forth and described, we hardly think that special damages could be recovered therefor, still the language of the demurrer does not in fact raise this precise question. It does not deny the right to recover damages for the element of physical injury because the nature, extent, and char-

acter are not adequately set forth, but disputes the existence of a cause of action merely because, in the language of the demurrer, " the petition shows by the facts alleged that no physical injuries attended the cause for fright." We think the petition does show physical injuries inflicted contemporaneously with the shock. Even as originally brought, the petition shows that the demolishment of the house caused the plaintiff to be " thrown about," that there was at the time both "shock and injury." In other words, she was physically thrown about the room, shocked, and injured. This would certainly seem to constitute a battery of her person, resulting in physical injury, the nature and extent of which are not described. By amendment it is shown that she was thrown about, upon, and against the floor, and from such shock and injury suffered great bodily as well as mental pain. We do not think, therefore, that it can be properly said, in the language of the demurrer, that " the petition shows by the facts alleged that no physical injury attended the cause for fright;" and since the demurrer must be taken to confine itself to the objections stated, the general allegations setting forth an accompanying physical injury should be taken as sufficient.

2. The demurrer, in order to authorize dismissal of the suit, necessarily had to raise the additional objection that the petition fails to show that the alleged mental impairment " was the natural and proximate result of the fright or shock, or that the defendant could or should have known that the negligent acts alleged in the petition would with reasonable certainty cause the results complained of." The two statements here contained amount, we think, to one and the same objection, since if it be granted that the defendant's misconduct was the efficient cause of the injury and that the result complained of directly followed as the reasonable and natural consequence, then the defendant would be chargeable with knowledge that such an effect would likely follow from such a cause. Indeed, it might be stated as an underlying principle of general application in negligence cases that if the injury complained of could not have been reasonably foreseen and anticipated as the direct and natural result of the defendant's act, then the wrong is not actionable. It is altogether impossible to harmonize the various holdings of the different courts of the country upon the question whether damages can be recovered where fright

is occasioned by the negligence of the defendant unaccompanied by any sort of concurrent physical injury, but where the shock or fright is of such nature as to be directly followed as a natural and reasonable consequence by physical or mental impairment. (See, for a general and exhaustive treatment of this and kindred questions, 1 Sutherland on Damages (3d ed.), § 21 et seq.) The rule, however, as recognized in this State has been stated by the Supreme Court in *Williamson* v. *Central R. Co.*, 127 *Ga.* 125, 131 (56 S. E. 119), as follows: " As a general rule, damages for mere fright are not recoverable. See *State Mutual Life Asso.* v. *Baldwin*, 116 *Ga.* 860; *Mabry* v. *City Electric Co.*, Id. 624; *Cole* v. *Atlanta R. Co.*, 102 *Ga.* 478; *Chapman* v. *Western Union Telegraph Co.*, 88 *Ga.* 763. There, of course, may be instances where fright may be considered as an element of damages, but they should be restricted to where there is some physical injury attending the cause of the fright, *or, in the absence of physical injury, where the fright is of such character as to produce some physical or mental impairment directly and naturally resulting from the wrongful act.*" (Italics ours.)

In the instant case the ground of demurrer now under consideration points out that the petition fails to show either contemporaneous physical injury, or that the resulting mental impairment was the natural and proximate consequence of the fright. As we understand the principle, even where in such a case there is attendant physical injury, in order to recover for resulting mental or physical impairment, such consequences must naturally and proximately follow. Does the petition in this case authorize a recovery for this element of damage? From the statement of the pleadings above made, it will be seen that the petition charges directly and in terms that the stated negligence on the part of the defendant constituted the " sole and proximate " cause of the plaintiff's mental derangement. Again, it is alleged that " as a result of said shock and injury the mind of petitioner almost instantly became unbalanced," etc. It is plain, therefore, both from the facts alleged and from the charge as in terms made, that the insanity was actually and almost instantly brought about by the mental and physical shock. Such being the case and no independent intervening cause being indicated or disclosed, but, on the contrary, such a cause being distinctly negatived, we do not think that it is abso-

lutely required that the petition should state as its conclusion either that such cause was proximate or that such result reasonably and naturally followed. From the facts stated, this is but a conclusion, and from the facts stated, if proved, it would become a question for the jury. 8 A. & E. Enc. of Law (2d ed.), 581, § 7.

Learned counsel for the defendant base much of their able argument upon the ruling made by this court in *Goddard* v. *Watters*, 14 *Ga. App.* 722 (82 S. E. 304). In that case there was no contemporaneous physical injury, and it appears that the ruling there made was not based upon the theory that the subsequent physical injury could not have followed as the direct and natural result of the alleged nervous shock, but the decision, as well as the dissenting opinion, appears to have been arrived at upon the theory that the petition failed to show a wilful or wanton intent on the part of defendant to injure the plaintiff. It is not our understanding of the rule adopted in this State that wilfulness or wantonness is a necessary element of negligence in order to enable one to recover damages either where the fright is accompanied with actual physical injury or where it is followed by physical or mental impairment as a direct, natural, and probable consequence. Wilfulness and wantonness *is* a necessary element where it is sought to recover for mere fright or mental suffering alone, and it may be true that it would authorize a recovery where the impairment actually resulted, but does not naturally follow as a usual, probable consequence. We are therefore unable to follow in their entirety the pronouncements made by this court in the case referred to, although in most respects the law as there laid down is clearly and aptly stated. See a comprehensive treatment of the entire subject-matter in a note to that case as reported in 7 Negligence and Compensation Cases Annotated, 1.

*Judgment affirmed. Stephens and Smith, JJ., concur.*