23131.   WRIGHT *v.* PEARSON.

208

*R. Earl Camp, E. L. Stephens,* for plaintiff in error.
*Blackshear & Blackshear,* contra.

MacIntyre, J.   Ivory Pearson brought a suit against D. D. Wright for a balance due for sawmill timber on lot of land No. 216, which timber had already been cut and appropriated by the defendant.   The defendant contends that the plaintiff could not recover unless he showed a full and complete performance of a certain written contract introduced in evidence by the defendant.   The jury found a verdict for the plaintiff.   The defendant certioraried the case to the superior court and his certiorari was denied.   He then excepted to the denial of the certiorari and brought the case to this court.

The evidence for the plaintiff, in effect, showed that he signed an instrument, which this court, in *Wright* v. *Pearson, 42 Ga. App.* 298 (155 S. E. 787), when this case was formerly before this court, said "constitutes a contract by which the owner [Pearson] of the timber [on lot 216 and 217], in consideration of a part payment of the purchase-money [$3000], agrees and obligates himself to sell the timber to the other person [Wright] and to convey the title thereto only when the entire agreed purchase-price has been paid in full;" that the defendant failed to pay the entire purchase-price as provided in the contract; that the defendant in violation of one of the terms of said instrument, which stated that the timber was not to be cut until all the purchase-price was paid, cut the timber on lot No. 216 without the consent of the plaintiff; that the title to lot No. 217 was in the Fulwoods; that "when the brother-in-law [of the Fulwoods] objected, we set down and wrote the boys and Morgan Fulwood came in and was willing to make title, and he brought the deeds up here.   I brought them up here myself, I have always been ready and willing and able to make Mr. Wright a deed to this when he paid me.   I never told Mr. Wright at any time that I could not get title to the timber on lot 217.   I told Mr. Wright I was willing to make him title as soon as he paid me.   Mr. Wright never at any time objected on the grounds that the Fulwood boys

had title, and that I did not have any title. Fulwood was to make him a title. The title never was to be in me. I told him that Fulwood would sign the papers for lot 217. I was in shape to get Mr. Wright title as I contracted to do. I brought the Fulwood boys up here to make him title and they were willing and ready for [to] make him title;" that after the signing of the contract Wright told the plaintiff that timber had come down and that if the Fulwoods wanted to back out, "let them back out if they want to, I will take your timber for $2750;" that later on the defendant told plaintiff's attorney that he would be willing to pay the $1000 [$2,-000 having already been paid], provided they could get the deed to the balance of the timber [on lot 217]; that the plaintiff's attorney before the suit was filed wrote Wright, "All parties interested will be in my office next Saturday, the 14th instant, and will be ready to close this matter up in accordance with your wishes. Pearson does not concede that your contention is correct, but the other party is willing for this timber to be included in the Pearson sale and will make the deed to the timber to you, provided the $1000 is paid. Please come to my office Saturday prepared to close this matter up;" and that the Fulwoods went with the plaintiff to see Wright and offered to make him title to lot No. 217, provided he would pay plaintiff the $1000, which Wright did not do.

The testimony of Wright, the defendant, was to the effect that he had no other contract with the plaintiff than the written instrument above referred to, that is, that he was to pay $3000 for the timber on both tracts, lot No. 216 and lot No. 217, and that the contract did not call for so much money for timber on one lot and so much for timber on the other lot; and that the instrument was an entire contract, indivisible, unambiguous, and could not be varied by parol testimony.

It will be noted that this is a suit on an account and not a suit on the written instrument. The act of 1847, which is embodied in section 3393 of the Code of Georgia of 1873 and which is still of force in this State (*Talbotton Railroad Co.* v. *Gibson,* 106 *Ga.* 229, 234, 32 S. E. 151), is entitled "An act 'to simplify and curtail pleadings at law,' and the *simplicity* of the act is, that it abolishes all distinction in pleadings and proof in an *action on an account* (italics ours), with a bill of particulars annexed, between a special agreement to pay the amount charged, and what the goods, or serv-

ices, were reasonably worth. The plaintiff may prove either, or both, and then the jury may find such a verdict as they may think proper under the evidence." *Johnson* v. *Quin, 52 Ga.* 485, 486. If the cutting of the timber and the appropriation thereof is a claim existing in account and is, therefore, within the 4th section of the act of 1847, "the plaintiff can prove it, by the will of the legislature, as fully as he would be able to do if the declaration contained all the counts known to the law of pleadings." *Cameron* v. *Moore,* 10 *Ga.* 368, 369.

So in this case, if the evidence showed that the defendant, in violation of the terms of the written instrument which stated that the timber was not to be cut until all the purchase-price was paid, cut the timber on lot No. 216 without the consent of the plaintiff, and the plaintiff either proved an express verbal contract of sale, subsequent to the written instrument, or proved that an implied contract existed by reason of the fact that the timber had been cut on lot No. 216 by the defendant, without the consent of the plaintiff, then the plaintiff could recover on his action on account. He was not suing on the written instrument. *Southern Railway Company* v. *Branch, 9 Ga. App.* 310. The defendant, however, contends that the written instrument was an entire contract, and that the plaintiff could not recover because he failed to have the title to lot No. 217 in himself and, therefore, had no right to offer to make the title to the defendant. Even if the contract was entire, under the evidence in this case the failure upon the part of the plaintiff to completely perform the entire contract would give the defendant the right to rescind; but in order to rescind he would have to return, or, if this were impossible, pay for, the goods which had been delivered to him. The defendant could not cut and appropriate the timber on lot No. 216 and at the same time refuse to pay for it, merely upon the ground that the plaintiff himself did not have the title to the other lot, No. 217. *Williams Manufacturing Co.* v. *Warner Sugar Refining Co.,* 125 *Ga.* 408, 412, (54 S. E. 95). However, in this case the evidence of the plaintiff was to the effect that the Fulwoods, the owners, were willing and ready to make the defendant title to lot No. 217 as soon as the defendant paid the plaintiff; that defendant never at any time objected on the ground that the Fulwood boys had the title and that they were to make defendant title to lot No. 217, until after he, the defendant, had cut the

timber on lot No. 216. "Neither the common law nor the statute of any state, so far as our knowledge and investigation extend, has ever required the making of a complete title while a part of the purchase-money was still unpaid and payment refused." *Knowles* v. *Elyton Land Co.*, 88 *Ga.* 642, 647 (15 S. E. 675).

We think the questions hereinbefore decided control in principle all of the grounds made in the motion for new trial as amended. We think it was a question for the jury to say whether or not under the evidence the plaintiff proved the allegations of his action on account, or whether or not the defendant substantiated his plea by showing that the written instrument was of force and effect and that the failure to convey the timber on lot No. 217 damaged him more than the balance due for the timber cut on lot No. 216. In conclusion we think the evidence authorized the verdict, and the judge of the city court did not commit reversible error in overruling the general and special grounds of the motion for a new trial, and hold that the judge of the superior court did not commit reversible error in overruling the certiorari.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*