26229. POLLARD, receiver, *v.* PHELPS.

DECIDED SEPTEMBER 23, 1937.

412

*J. W. Harris, H. A. Wilkinson, Henry Wilkinson,* for plaintiff in error.

*Olin Hammock,* contra.

SUTTON, J. ■ The special grounds of demurrer relate only to allegations of the first count, which was subsequently stricken by amendment, and need not be considered. To the petition as amended, where under the second count the plaintiff sought recovery on the ground that the defendant wantonly and wrongfully ran over and mutilated after death the body of her deceased husband and caused her great mental pain and anguish, the defendant renewed its general demurrer on the ground that no cause of action was set forth. We think the court properly overruled the demurrer. While it is well settled that for mere negligence one can not recover for pain and suffering unless there has been damage to person or purse, it is equally well established that for a wanton and intentional tort recovery may be had for such elements of damage. *Dunn* v. *Western Union Tel. Co.,* 2 *Ga. App.* 845 (3) (59 S. E. 189); *Hines* v. *Evans,* 25 *Ga. App.* 829 (1) (105 S. E. 59); *Young* v. *Western & Atlantic Railroad,* 39 *Ga. App.* 761, 766 (148 S. E. 414); *Atlanta Hub Co.* v. *Jones,* 47 *Ga. App.* 778, 780 (171 S. E. 470); *Stephens* v. *Waits,* 53 *Ga. App.* 44 (184 S. E. 781). The present suit is the first of its kind that has appeared in the appellate courts of this State. Cases where there was a wrongful dissection or mutilation of a dead body otherwise have received recognition. At common law no property right was held to exist in a dead body; and though this view is still maintained in a strict sense, the courts of civilized and Christian countries regard respect for the dead as not only a virtue but a duty, and hold that, in the absence of testamentary disposition, a quasi property right belongs to the husband or wife, and, if neither, to the next of kin. Note in Ann. Cas. 1918D, 733. It includes the

right to have the body delivered to such entitled person in the same condition in which it was when death supervened. In *Louisville & Nashville Railroad Co.* v. *Wilson,* 123 *Ga.* 62, 64 (51 S. E. 24), it was said: "The subject of the right of burial, and the protection of the bodies of the dead arose in the matter of the widening of Beekman Street in the City of New York, and was referred to Hon. Samuel B. Ruggles, as referee. He made a learned and elaborate report, which was confirmed by the court. It will be found in 4 Brad. R. 503 et seq., and from it the following excerpts are taken: 'The power thus exercised by the ecclesiastical tribunals was not spiritual in its nature, but merely temporal and juridical. It was a legal, secular authority, which they had gradually abstracted from the ancient civil courts, to which it had originally belonged; and that authority, from the very necessity of the case, in the State of New York, must now be vested in its secular courts of justice. The necessity for the exercise of such authority, not only over the burial, but over the corpse itself, by some competent legal tribunal, will appear at once, if we consider the consequences of its abandonment. If no one has any legal interest in a corpse, no one can legally determine the place of its interment, nor exclusively retain its custody. A son will have no legal right to retain the remains of his father, nor a husband of his wife, one moment after death. A father can not legally protect his daughter's remains from exposure or insult, however indecent or outrageous, nor demand their reburial, if dragged from the grave. The dead, deprived of the legal guardianship, however partial, which the church so long had thrown around them, and left unprotected by the civil courts, will become, in law, nothing but public nuisances; and their custody will belong only to the guardians of the public health, to remove and destroy the offending matter with all practical economy and dispatch. The criminal courts may punish the body-snatcher who invades the grave, but will be powerless to restore its contents. . . The sacred relics of Mount Vernon may be torn from their "mansion of rest," and exhibited for hire in our very midst, and no civil authority can remand them to the tomb. . . It will be seen that much of the apparent difficulty of this subject arises from a false and needless assumption, in holding that nothing is property that has not a pecuniary value. . . The world does

not contain a tribunal that would punish a son who should resist, even unto death, any attempt to mutilate his father's corpse, or tear it from the grave for sale or dissection; but where would he find the legal right to resist, except in his peculiar and exclusive interest in the body? The right to the repose of the grave necessarily implies the right to its exclusive possession.'"

As was well said in Kyles v. Southern Ry. Co., 147 N. C. 394 (61 S. E. 278, 281): "Respect for the dead is an instinct that none may violate. The democracy of death is superior to the edicts of kings. Rizpah became forever famous among her kind when she defied the king of Israel who would treat the bodies of her dead with contempt, and Sophocles had immortalized Antigone, who vindicated the like sentiment of human nature as a higher law than that of her sovereign. The deceased may have moved in the humbler walks of life; but to the plaintiff he was husband and the father of her children. It was her right, old as time, as broad as humanity, and as deep as the heart of man, that his mortal remains should be treated with due respect." It is to the credit of our civilization that law, the vigilant and final sentinel, stands guard about our withered form, when the spirit has flown to that immortality for which we ardently do hope. "The right to the possession of the dead body of his wife for preservation and burial belongs to the husband. Any unlawful and unauthorized mutilation of the remains would be an invasion of this right, for which an action for damages would lie. In such an action damages will be allowed for mental suffering and injury to the feelings, although no actual pecuniary loss is alleged or proved." *Medical College* v. *Rushing*, 1 *Ga. App.* 468 (57 S. E. 1087). The unauthorized mutilation of the dead body of a husband likewise gives a right of action to the widow. *Louisville & Nashville R. Co.* v. *Blackmon*, 3 *Ga. App.* 80 (59 S. E. 325); *Liberty Mutual Insurance Co.* v. *Lipscomb*, 56 *Ga. App.* 15 (192 S. E. 56); 8 R. C. L. 695, citing Burney v. Childrens Hospital, 169 Mass. 57, 47 N. E. 401, 61 Am. St. R. 273 and note, 38 L. R. A. 413 (father); Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 28 Am. St. R. 370, 14 L. R. A. 85, and note (widow); Koerber v. Patek, 123 Wis. 453, 102 N. W. 40, 68 L. R. A. 956 (child of widow). In *Jacobus* v. *Congregation of the Children of Israel*, 107 *Ga.* 518 (2) (33 S. E. 853), it was held: "In a suit for

damages for wrongfully disinterring a dead body, if the injury has been wanton and malicious, or is the result of gross negligence or a reckless disregard of the rights of others, equivalent to an intentional violation of them, exemplary damages may be awarded, in estimating which the injury to the natural feelings of the plaintiff may be taken into consideration." To the same effect see *McDonald* v. *Butler,* 10 *Ga. App.* 845 (74 S. E. 573) ; and for unlawful and unwarranted interference with the exercise of a right of burial, see *Wright* v. *Hollywood Cemetery,* 112 *Ga.* 884 (38 S. E. 94, 52 L. R. A. 621). From these decisions it will be seen that in Georgia, where ecclesiastical courts have never been recognized, rights with respect to burial, cemeteries, and dead bodies are protected by the secular courts. "Malicious" in its broad sense does not necessarily mean ill will or hatred. "In a legal sense, any act done wilfully and purposely to the prejudice and injury of another, which is unlawful, is, as against that person, malicious." *Southwestern Railroad Co.* v. *Mitchell,* 80 *Ga.* 438 (5) (5 S. E. 490). "Evidence of a general disregard of the right consideration of mankind directed by chance against the individual injured is sufficient proof of malice. Civil Code (1910), § 4451." Code of 1933, § 105-1002. *Stewart* v. *Mulligan,* 11 *Ga. App.* 660 (2) (75 S. E. 991) ; *Wilkerson* v. *Milam,* 37 *Ga. App.* 288 (139 S. E. 831).

Under the principles of law as announced in the decisions discussed above, it must be held that where a petition alleges that a railroad company wantonly and wrongfully ran its train over, mangled, and mutilated the dead body of the husband of the plaintiff, such mangling and mutilation not being incident to the homicide of the deceased but occurring thereafter, a cause of action is set out in favor of the plaintiff where she is entitled in law to receive the body after death. It is not shown by the petition whether the deceased, when in life, was a wilful trespasser upon the line of track of the railroad. It was alleged, however, that after death the body of the deceased "remained upon the line of track of said defendant at said point." Not being within fifty feet of a crossing, but at a point one mile from a station, and not where the railroad had authorized the use of its property expressly or impliedly, no duty rested on the railroad servants to anticipate the presence of the body. Ordinarily the only duty

which a railway company owes to a trespasser upon or about its property is not to injure him wantonly or wilfully after his presence has been discovered. *Hammontree* v. *Southern Railway Co.,* 45 *Ga. App.* 728 (165 S. E. 913) ; *Young* v. *South Georgia Railway Co.,* 34 *Ga. App.* 537 (130 S. E. 542) ; *Central of Georgia Ry. Co.* v. *Stamps,* 48 *Ga. App.* 209 (3) (172 S. E. 806) ; *Ashworth* v. *Southern Railway Co.,* 116 *Ga.* 635 (43 S. E. 36) ; *Dodson* v. *Southern Railway Co.,* 55 *Ga. App.* 413 (190 S. E. 392). But failure to exercise ordinary care to prevent the injury, even to a trespasser, helpless to extricate himself from his peril, may amount to wantonness. "The elemental concept, in cases of trespassers, is of a liability only for wanton or wilful injury; but the line of demarcation between wilfulness or wantonness and the failure to use ordinary care to prevent injuring a person in obvious peril is so inappreciable as to become merely a distinction without a difference. To fail to exercise ordinary care to prevent injuring a person whose peril is seen and known is almost necessarily wilful or wanton. Any man who is not wanton in disposition or who does not wilfully intend to injure another will exercise his customary degree of care to prevent the act he may happen to be doing from injuring one whom he sees or knows to be imperiled by that act. Just so, the law's model of what men ought to be,—the ordinarily prudent man,—unless he be actuated by wantonness or by a wilful intention to do harm on the particular occasion, will use ordinary care and diligence to prevent injuring his fellow man, when he discovers he is about to hurt him. Therefore the law, having regard to what its standard, its model,—the ordinarily prudent man,—would do under such circumstances, imputes wilfulness or wantonness to those who know that some fellow man has been imperiled, and then fail to exercise ordinary care to prevent injuring him. Conversely, unless the circumstances are such that the failure to exercise ordinary care and diligence is at least tinged with wantonness or wilfulness, there can be no recovery by the trespasser. This enunciation may not be accurate enough for application to the case of a trespasser, whose presence ought to be anticipated for any special reason, but not actually known, though we are clear that, away down at the bottom of things, the duty owed to a trespasser, throughout all the phases of varying circumstances, is fundamen-

tally the same. . . It usually takes the element of knowledge of the danger to which the trespasser is subjected, to give to the failure to exercise care for his safety that quality of wilfulness or wantonness necessary to raise liability" (citing). *Charleston & Western Carolina Railway Co.* v. *Johnson,* 1 *Ga. App.* 441 (57 S. E. 1064).

Even if the presence of a dead body upon the line of railway be analogous to that of a trespasser, but helpless to extricate himself from his difficulty, a railroad is under a duty not to wantonly and wilfully run over and mangle it after its presence becomes known. The petition alleges that the body could be clearly and easily seen for a distance of a mile or more in either direction; that the defendant wilfully and wantonly ran over and mangled the body on the night following the death of the plaintiff's husband; that members of the crew left the train and viewed the body, but failed to make any report; that on the following morning another train repeated the act of mutilation, the servants of the defendant observed the body, and thereafter on the same morning other servants of the defendant passed over the body in a hand-car, viewed the mangled remains, and made no report; that the body was allowed thus to remain until the vultures began to feed upon it, and further mutilate and disfigure the same, until the authorities of Randolph County caused interment to be made. If the facts alleged do not show an intentional tort, they set out such a reckless disregard of the rights of the plaintiff as to be the equivalent of an intention to run over and mangle the body. As a result of this it is alleged that the plaintiff suffered great mental pain and anguish, which required her to take to her bed, and that her physical condition and health were so impaired thereby that she will never recover. It will be noted that she alleged not only mental pain and anguish but permanent damage to her physical health. "In *Goddard* v. *Watters,* 14 *Ga. App.* 722 (2) (82 S. E. 304), this court recognized the rule that damages may be recovered for mere nervous shock or fright and for physical injuries resulting therefrom where the act causing such shock or fright was committed by the defendant deliberately, maliciously, or wantonly, through an utter disregard of consequences. See, to the same effect, *Hines* v. *Evans,* 25 *Ga. App.* 829 (105 S. E. 59); *Pettett* v. *Thompson,* 33 *Ga. App.* 240 (125 S. E. 779)." *Young* v.

*Western & Atlantic Railroad,* 39 *Ga. App.* 761, 767 (148 S. E. 414). We think that the allegation that she is entitled to judgment "for the wrongful, wanton, and wilful treatment, mutilation, and mangling and neglect of the body after death" is equivalent, with the other allegations of the petition, to a charge that the defendant acted wantonly and wilfully in running over and mangling the body of the plaintiff's deceased husband, and that with the allegations of pain and suffering caused her thereby, together with permanent damage to her physical health, she set out a cause of action. Furthermore, under her prayer, she would be entitled to exemplary damages if on the trial of the case the facts alleged were made to appear. The court did not err in overruling the general demurrer.

■ On the trial the evidence did not support the allegations of the petition. We do not think that a scintilla of evidence was introduced to show the essential elements of wantonness, wilfulness, or reckless disregard of the rights of others on the part of the defendant. It is true that some witnesses living in the vicinity testified to the presence of mangled portions of the body strewn up and down the track for a distance of an eighth of a mile; but this evidence merely shows how complete was the destruction, and how difficult of identification as a human body was the corpse. It was conclusively shown that practically all of the body was sundered into small bits. The allegations of the petition that some members of the crew viewed the body and saw blood on the engine when the first train passed are entirely lacking in proof. While the engineer did state that two of the crew left the train and examined "it," his whole testimony, properly construed, shows that he had reference, not to the body or any part thereof, but to the rigging under the cars which it was feared had become loose. The testimony of these two men also showed that it was the under parts of the train that they were investigating, and that they were not aware that the train had run over a human being. It is no unusual occurrence for a train to run over a live animal, but no member of any crew saw, or had reason to suspect the presence of, a dead body on the line of railway. The track supervisor, while operating or riding in a hand-car or motor railway-car on an inspection of the tracks, as was his custom, saw what he regarded as a piece of hog flesh about the size of a fist,

but denied knowledge of the presence of any part of a human being. Nor were any of those indefinite persons who passed along in vehicles, as alleged by the plaintiff, shown to have knowledge of or reason to suspect the presence of a dead body. We can appreciate the deep and painful emotions of the plaintiff, however faintly she testified on the subject of her suffering. Her only statement was that she had not seen the clothing of the deceased, because "I just didn't feel like I could bear to look at them." We apprehend that a like solicitude on the part of the jury led them unconsciously into the error of treating the case as if wilfulness, wantonness, or a recklessness on the part of the defendant had been shown. To place upon the profession of railway employees, whose deeds of heroism and devotion to duty have been told in song and story, the stigma of such abandon, the evidence should be definite and convincing. The case is similar on its facts to that of Kyle v. Southern Railway Co., 174 N. C. 394, 61 S. E. 278, 16 L. R. A. (N. S.) 405, in which it was held that the evidence was insufficient to show wantonness, wilfulness, or recklessness on the part of the railroad. That seems to be the only case of this kind that has appeared in the appellate courts of the South; but with its conclusions we readily agree. A leading case, showing that mental suffering, however clearly existent independent of physical injury, is not a proper element of recoverable damages except in the instances of wilful wrong, is Nichols v. Central Vermont R. Co., 94 Vt. 14, 109 Atl. 905, 12 A. L. R. 333. The annotations in A. L. R. may be helpfully consulted by the reader. From what has been said it follows that a new trial should have been granted on the general grounds of the motion.

The first special ground of the motion complains that the court, in a portion of its charge, erred in stating to the jury that the plaintiff alleged that the defendant negligently, wantonly, and maliciously mutilated the body of the plaintiff's deceased husband. While the plaintiff did not specifically allege that the act of the defendant was malicious, the defendant can not be said to have been harmed by the inclusion of the word "malicious" in the charge, inasmuch as the alleged wantonness would include malice in its broad sense, as shown in the first division of the opinion. In the same portion of the charge the court stated that the plaintiff was suing for damages done to her for mental pain and

anguish; and it is urged that there is no such allegation in the petition and that no such issue was in the case. A careful reading of the allegations of the petition and the evidence will demonstrate that the contentions are without merit and require no further discussion.

The second special ground complains of the charge, "that, as a principle of law in some torts, the entire injury is to the peace and happiness or feelings of the plaintiff; in such cases the measure of damages can not be prescribed except by the enlightened consciences of impartial jurors. The worldly circumstances of the parties, the amount of bad faith in the transaction, and all the attendant facts should be weighed," as harmful, injurious, erroneous, and not authorized by any issue in the pleadings or contentions of the parties. This charge was not error for any reason assigned.

Ground 3 complains that the court erred in charging the jury: "In all cases of tort, such as the present, if you find that the trespass has been wanton and malicious or is the result of gross negligence or a reckless disregard of the rights of the wife entitled to sue, equivalent to an intentional violation of them, exemplary damages may be awarded to the plaintiff." It is insisted that the court erred in stating that the case was one of tort, and thereby expressed an opinion and submitted to the jury the question of deciding whether or not the trespass was wanton and malicious, without any such allegation or issue in the case. The case was so obviously an action of tort, that the court correctly denominated it as such. To do so was not equivalent to an expression of opinion that the defendant had committed a tort, but, properly construed and, as we think, the jury understood, only informed the jury that the plaintiff so contended. The rest of the charge should not have been given, being unauthorized by the evidence.

No merit is shown in the further ground that the court failed to charge the jury that the suit was for the wrongful death of the plaintiff's husband, as well as for mental pain and suffering on account of the mutilation of the body after death. By amendment the plaintiff entirely eliminated from her cause of action any contention that the defendant caused the death of her husband. It is true that the petition, as originally drawn in two counts, did

state that "In conclusion to both counts of this her petition, plaintiff avers that she is entitled to judgment for damages for the wrongful and negligent homicide," etc.; but after the allegation in that respect had been stricken, notwithstanding the plaintiff failed to also specifically strike her prayer to that extent, if it could be said that such portion remained, it must be treated as mere surplusage. It is further urged that the court should have charged that it must have appeared that the servants of the defendant were acting in the scope of their employment at the time of the alleged mutilation of the body. The failure to do so was not error, no issue being made on the trial that the servants were not so acting, and this was apparently conceded by the defendant. As hereinbefore ruled, the plaintiff would not be entitled to recover without showing injury to person or purse or that the acts of the defendant were wilful and wanton. The evidence showing neither, the verdict was unauthorized; and it is unnecessary to deal with any other assignment of error or in the charge of the court. The court erred in overruling the motion for new trial, for the reasons hereinbefore mentioned.

. *Judgment reversed. Stephens, P. J., and Felton, J., concur.*