27452, 27536. FLOYD *v.* MORGAN; and *vice versa.*

DECIDED JULY 11, 1939. REHEARING DENIED JULY 27, 1939.

*Maddox & Griffin,* for plaintiff.

*Barry Wright, Jack Rogers,* for defendant.

MACINTYRE, J. ■ A. J. Floyd brought an action against H. D. Morgan, to recover money on a written promise which was appended to the petition and made a part thereof, as follows:

"For and in consideration of three hundred ($300) dollars in hand paid to the undersigned, by H. D. Morgan, receipt of which is hereby acknowledged, the undersigned, A. J. Floyd, does agree and bind himself, his heirs, executors, and administrators, that he will sell, transfer, and convey good and sufficient right, title, and interest to and for the following described property to the said Morgan, to wit: All his contract, rights, and leases with Sinclair Refining Company, that of warehouses and filling-stations in Floyd

County, Georgia; and he agrees to execute such transfers and assignments of such leases, contracts, and rights as he may have, including leases on warehouses and filling-stations, agency contracts, consignment contracts, and all other contracts; also two Dodge trucks, being all the trucks owned by him; the same now being used in delivery of gasoline and petroleum products in said county. Now, therefore, if, on or before twelve o'clock noon, central standard time, July 31, 1937, the said Morgan shall pay to the undersigned the sum of sixty-five hundred ($6500) dollars, and assume payment due on one of said Dodge trucks of approximately five hundred ($500) dollars, this contract shall be and become a transfer, conveyance, bill of sale, and deed to all of said property, rights, contracts, leases, and franchises; and the undersigned agrees to execute such other and further transfers, contracts, deeds, and assignments as may be requested of him to make the same effective; forty-seven hundred ($4700) dollars of this to be paid upon completion of transaction, balance one hundred ($100) dollars a month. But if such payment is not made on or before such time, time being of the essence of the contract, this agreement is null, void, and of no effect, and shall expire and be binding on neither party. And the undersigned furthermore does and will warrant good title to all the property, assets, rights, contracts, leases, and franchises hereby conveyed or to be conveyed, subject only, however, to the approval of the Sinclair Refining Company of the transfer of the franchises and lease."

The defendant filed a general demurrer to the petition, which the court overruled, and the defendant in his cross-bill of exceptions complains of this judgment. We therefore will first take up the objections raised in the cross-bill of exceptions. Very briefly, the allegations of the petition relating to the option to purchase the agency of the Sinclair Refining Company, which option is quoted above verbatim, are that the defendant gave notice that he desired to exercise the option; that the plaintiff complied with all the terms of the option; turned over and delivered to the defendant all the warehouses and filling-stations in Floyd County, Georgia, and transferred and assigned such leases and contracts as he had, including leases on warehouses and filling-stations, agency contracts, consignment contracts, and all other contracts, and also delivered to the defendant two Dodge trucks and other property.

The plaintiff, in effect, alleged that the terms of the written option, a copy of which was attached as an exhibit and made a part of the petition, had been performed by the plaintiff, and nothing was to be done on the part of the defendant but to make a money payment.

According to the common-law form, where the plaintiff brings his suit on assumpsit, he may plead a count on the contract and a count on quantum valebant. Assumpsit is not maintainable without showing the existence of a contract expressed or implied between the parties. "Special assumpsit. When the right to recover is based upon an express contract the action is special assumpsit. General assumpsit is the form used when the right to recover is based upon an implied promise without regard to whether or not there was an express contract. Common counts. To this class belong the common counts, which are based on a promise, express or implied, to pay money in consideration of a preceding and existing debt. These are the indebitatus count, under which could be inserted a count for the price or value of real property sold by the plaintiff to the defendant; the quantum meruit; the quantum valebant; and the account stated. The quantum meruit and the quantum valebant counts are seldom used, for the indebitatus count covers the ground.. Account stated differs from the action of account in that the account sued on is balanced and the amount agreed on before action brought." Gould on Pleading, 48. Our Supreme Court has said: "Where the terms of a special agreement have been performed on one side, and nothing is to be done on the other but to make a money payment, such payment may be enforced by indebitatus assumpsit. . . Where goods have been supplied under a special agreement, but not in conformity thereto, compensation may, nevertheless, be enforced by action of general assumpsit, if the defendant has retained and enjoyed the benefit of what was actually furnished." *Hancock* v. *Ross*, 18 *Ga.* 364.

John A. Jones, member from Paulding County, introduced in the General Assembly of this State a bill, the caption of which stated that its object was "to simplify and curtail pleadings at law," which was enacted into a law in 1847, and "makes a writ or complaint, in the form which it prescribes, a sufficient writ, in all cases within its provisions." *Cameron* v. *Moore*, 10 *Ga.* 368. Sec-

tion 3 of this act (Ga. L. 1847, p. 204) is as follows: "And be it further enacted, that the form of an action to recover money on a note, bill, bond, receipt, or written promise of any'' description, by adding a copy of which, with the endorsers' names (if any) and credits, shall be appended—and when the suit is on a bond, the breach from which arises the right of action shall be set out plainly —may be as follows, to wit:

"Georgia,        County. To the        Court of said County.

"The petition of (A. B.) sheweth that (C. D.) of said county, is indebted to him in the sum of      dollars, besides interest, on a    dated    and due    , which said the said (C. D.) refuses to pay: Wherefore your petitioner prays process may issue requiring the said (C. D.) to be and appear at the next    court for said county, to answer your petitioner's complaint.

"Provided, nevertheless, that when any defendant shall, at the appearance term of such cause, demand oyer of any note, bill, bond, receipt, or other instruments sued on, the plaintiff shall be compelled to produce the same to the defendant for the purpose of examination."

Section 7 of this act is as follows: "And be it further enacted, that no departure from the before prescribed forms shall work a nonsuit, provided the plaintiff shall plainly and distinctly set forth his cause of action."

Analogizing the complaint in the instant case, under the statute of 1847, to an action of assumpsit at common law, it contains one single count, and is a suit filed on a written contract, with the contract appended and attached to the petition as an exhibit, and alleges written promise to pay. We think the pleader has brought himself within the third section of the act of 1847; and a count on quantum valebant, being a proper count in a declaration in assumpsit, would be presumed, and is by legal contemplation in the complaint by virtue of said legislative act, and the plaintiff can prove quantum valebant by the will of the legislature as fully as he would be able to do if the declaration contained all the counts known to the law of pleading, one of which is of course the count of quantum valebant. *Cameron* v. *Moore,* supra; *Blue* v. *Ford,* 12 *Ga.* 45, 46.

This act of 1847 is still the law of this State, and, when one of its

forms is used, it abolishes all distinctions in pleading and proof in actions to recover money on a written promise, where a copy is appended and added to the petition, between a special agreement to pay the amount stated in the written promise and the implied agreement to pay what the goods "had and received" were reasonably worth. While the petition in this case could have been set forth in two counts, one on the special agreement and one on the goods "had and received," it does not do so, but by the will of the legislature the plaintiff may prove it as fully as he would be able to do if the petition contained the two counts which are known to the law of pleading in suits of this character, to wit, assumpsit. *Wright* v. *Pearson,* 48 *Ga. App.* 207 (172 S. E. 590) ; *Johnson* v. *Quin,* 52 *Ga.* 485, 486. In *Tuggle* v. *Wilkinson,* 17 *Ga.* 90, Chief Justice Lumpkin said: "This complaint is well brought under Jones' forms. And so far from construing the act strictly, it should be liberally interpreted, intended as it was to facilitate the recovery provided by law for the redress of wrongs. And it is a feather in the cap of its author, that the commissioners sent to this country from England, to look into the mysteries of American law reform, have transmitted a copy of this act home, and it now stands upon the statute book of the British Parliament as a law of the realm. . . From the first settlement of this colony in 1732, certainly from the adoption of the first constitution in 1777, our people have exerted their ingenuity to the utmost to simplify legal proceedings. When the act of 1799 was passed, it was fondly supposed, no doubt, that this darling object had been accomplished. But the judges of that day, unable to throw off the shackles of their professional education, instead of construing this act by itself, as they should have done, read and enforced it in the light of the British books, adhering as pertinaciously as ever to the forms prescribed by the British courts. And then commenced another struggle. . . Finally, in 1847, a heavy blow was aimed at fictitious forms. . . It is needless to mince matters any longer —the age of quirks and quibbles is past in Georgia. . . Henceforth, form is nothing—substance is everything." The late Sylvanus Morris, who was formerly the dean of Lumpkin Law School of the University of Georgia, has well said: "The 'Jack Jones Forms' were embodied into the New York Code of Procedure some fifty years ago, and of course credited to England.

Perhaps one half of the States of the Union have adopted the New York Code in one or another form, calling it 'Code Pleading,' and in Georgia they were law and practice long before the New York Code was framed. Thus the 'Jack Jones Forms' prevail in more than half of the States of the Union, and throughout the world-broad empire of Britain. They are not mere short forms. They are adaptations of the principles of pleading to modern conditions. They present to the court and jury the legal effect of the facts of the case, without repetition, circumlocution or verboseness. They are a distinct addition to the science of pleading. Their author had the vision and ability to realize his views. He may be truly called the father of modern reform procedure." Georgia Bar Association Report, 1922, 113.

The tendency in this country, even at the present time, seems to be to do the very thing that the caption of the act of 1847 said that the legislature was attempting to do; that is, "to simplify and curtail pleading at law." Pleading is the guide and compass by which the judge is asked by the parties to direct and steer the case, good pleading being the rules which, if correctly applied, would produce the proper issues. The court should be careful, and so construe the pleading as to allow the case kept in the deep channels of substance, so that the haven of real truth may be safely and quickly reached, and should not construe the pleading so that the ascertainment of the truth will be impeded or wrecked in the shoals and shallows of fictitious technicalities. Form should yield to substance. In the instant case the plaintiff sued on the contract and set out the facts as they existed, and the pleaded facts set out a right to recover, based on a written promise as well as on a right to recover, if proved, on an implied promise for "goods had and received." The petition, being well brought under Jones' forms, is good; and if the plaintiff proved either that the defendant complied with the conditions precedent in the option and executed the same, or if he proved that he received goods described in the option, and there was nothing left to do but for him to pay the value thereof, he could recover in quantum valebant "goods had and received." The judge did not err in overruling the general demurrer, and the objections in the cross-bill of exceptions are without merit.

■ We come now to the questions raised in the main bill of ex-

ceptions, the first of which is whether or not the court erred in granting a nonsuit. It should be noted that the option under discussion provides for payment as a condition precedent to the exercise thereof. If the defendant paid the money, then the property would be delivered, etc. The contract then provides: "But if such payment is not made on or before such time, time being of the essence of the contract, this agreement is null, void, and of no effect, and shall expire and be binding on neither party." The plaintiff testified, that on the morning of the 26th the Sinclair Refining Company's representatives began checking him up, and at five o'clock that afternoon they completed the check, and he turned the keys over to Pop Jones, an agent of the company; that he and the defendant went out on the platform, and the plaintiff told the defendant that he (defendant) was in and that the plaintiff was out; and that the defendant immediately replied, "Let's go out and get it straight;" that the defendant thereupon told him that he could not go through with the trade; that the only deliveries the plaintiff made to the defendant were based on the statement of the plaintiff, "Here they are, they are yours," and that the defendant in effect immediately suggested that "We go out and sit in his car, and said we would get straight, and after we got out to the car he said he was not going to pay that much," thus notifying the plaintiff that he was not going to exercise the option.

Up to this point in his testimony the plaintiff had said nothing with reference to the defendant's son. The defendant, being put on the stand by the plaintiff for the purpose of cross-examination, testified that the reason he could not go through with the trade was that the Refining Company did not wish to have as its agent a man who was a dealer in automobiles. Certainly, up to this point, the testimony does not show that the defendant had received any of the goods named in the option. The testimony of the plaintiff shows that sometime later, either that day or the next, the company made a contract with the defendant's son to act as its agent in Floyd County. The mere fact that he turned down the option for the above-stated reason or reasons (that is, that the company would not accept him as agent, or the defendant thought the price was too high) and the company then made a contract with the son, does not authorize a finding of fraud and deceit. The petition alleges that both the plaintiff and the defendant authorized

and instructed the company to name the son of the defendant as agent for the company in Floyd County, and that the son succeeded to all the rights that the plaintiff had under the contract with the company in Floyd County, and took charge of said business and all of said property described and contemplated under the option; thus, in effect, alleging that the son received the property as the agent of the father. The testimony of the plaintiff is to the effect that he endeavored to turn the property over to the father immediately after he was checked out of the Refining Company, but that the father (the defendant) refused to accept it. The reason for the refusal to accept, as stated by the plaintiff, was that he (defendant) did not wish to pay that much for the property. However, the defendant testified that the reason he refused to accept the property was that the company had told him that it would not accept him as their agent, because of the fact that he was a dealer in automobiles; so, whatever may have been the reason for the refusal of the defendant in person to receive the property named in the option or any part thereof, he did not do so. Nor, in the plaintiff's testimony, did he contend that he had delivered the property to the son as the agent of the father; the effect of his testimony being that when he was checked out he delivered the property to an agent of the company, and that after the father had refused to accept the property the son signed an agency contract in his own name. Thus, so far as the testimony of the plaintiff and the defendant goes, it does not appear that the defendant ever exercised his option; and if he did not do so, of course he was subject to the penalty of losing the $300 which he had paid for the option. Nor does their testimony show that an implied contract arose for "goods had and received," because the effect of the testimony of both was that the defendant refused to receive any of the goods named in the option.

It is well here to pause and ascertain the meaning of an option. 13 C. J. 336, § 183, states: "An option founded on a consideration is a unilateral agreement binding, from the date of its execution, on the party who executes it; and it becomes a contract inter partes when exercised according to its terms." In the option in this case, payment was to be made at the defendant's option, not at the plaintiff's and the contract was null and void if the defendant did not exercise his option and make payment. There

was the additional testimony of Norwood Floyd, the brother of the plaintiff, that the following conversation took place between him and the defendant: "I thought you [defendant] were going to be the agent; and he says there is one hitch to it, that is my connection with the Ford plant, but I have them to take my son as agent until I could sever my connection there. That was immediately before Alton [Floyd, the defendant] left them [left the employment of the Refining Company]; it was either Saturday afternoon or Monday morning, before he left that afternoon." But this conversation took place before the plaintiff was checked out by the company, and before the plaintiff claims that the option had been exercised (that is, before its conditions had been fulfilled), and before he endeavored to have the defendant accept the goods or any part of them.

Conceding that the conversation took place as stated, the defendant had a right thereafter to refuse to exercise the option for whatever reason (not, of course, a fraudulent or illegal one) he saw fit. In fact, he did not have to give a reason if he did not desire to do so. Whether his reasons were wise or foolish, or whether he would forego the exercising of his option in order that a son might negotiate for the agency, or that any one else might negotiate for the same, or merely because he did not care to exercise his option, it was immaterial why he did not exercise his option. The question was, did he exercise his option, or was the property described in the option received and retained by the defendant under the agreement and the benefits enjoyed by the defendant even though not in conformity with the agreement? Of course the defendant could not deceive and defraud the plaintiff out of his goods or property by using the option as a part of a fraudulent scheme, and not subject himself to damages. The testimony having failed to show that the defendant himself, or through his authorized agent, exercised the option or received for his benefit the property or goods described therein, the nonsuit was properly granted.

■ Certain letters were offered in evidence in toto, without stating any particular purpose for which they were tendered, and certain parts of the letters recited facts which were simply self-serving declarations of great import to the plaintiff's case. It was not reversible error to sustain the objection that the letters were recitals of fact, and were simply self-serving declarations.

*Judgment affirmed on both bills of exceptions. Broyles, C. J., and Guerry, J., concur.*

### ON MOTION FOR REHEARING.

MacIntyre, J. The option provided: "But if such payment is not made on or before such time [twelve o'clock noon, central standard time, July 31, 1937], time being of the essence of the contract, this agreement is null, void, and of no effect, and shall expire and be binding on neither party." This provision is one that time is of the essence of the contract, and a promise by the optionee to pay the money is not a fulfillment of the condition, but the money must also be paid or tendered within the time specified. Lockman v. Anderson, 116 Iowa, 236 (89 N. W. 1072); Winders v. Kenan, 161 N. C. 628 (77 S. E. 687). See the definition of option in *Black* v. *Maddox,* 104 *Ga.* 157, 162 (30 S. E. 723). Williston, in his latest edition of his work on contracts, said: "Where an option is conditional upon the payment of a sum of money, a promise by the offeree to pay the money is not a fulfillment of the condition, and therefore not an acceptance of the option. Nor is an option to purchase certain property conditional on payment of the purchase-price accepted by the optionee's appropriation of the property." 1 Williston on Contracts (rev. ed.), 218, § 75. See also 3 Williston on Contracts (rev. ed.), 2390, § 853 (note 3, 4). We can not feel but that we were correct when we stated in the third headnote that "The option contract in the case at bar contains an express provision to the effect that the optionee had to pay the stated price as a condition precedent to his right to demand delivery." The motion for rehearing is overruled on each and every ground.

*Rehearing denied. Broyles, C. J., and Guerry, J., concur.*