## 25895. TULLY v. TULLY.

UNDERCOFLER, Justice. This litigation originated as an action for divorce, alimony and custody of children brought in De-Kalb County by the wife who is the appellee here. Before any written orders were entered in the action, two of the minor children died in a fire in the home of their aunt located in North Carolina where they were visiting with their mother. The appellee authorized the funeral arrangements and directed that the children be interred at Ft. Gaines, Ga., where her mother lived. The appellant filed a motion to restrain the appellee from proceeding with the funeral arrangements. He claimed that he had not been consulted or permitted to exercise any of his parental rights with respect to his children's burial. He contended that the parties had no close relatives in Ft. Gaines and the children should be interred in Athens or Atlanta, Ga., which is presently the home of the parties. The court issued an ex parte order restraining the appellee from proceeding with the burial together with a rule nisi to show cause. The record shows that the appellee, who was injured and hospitalized as a result of the fire, did not receive notice of the restraining order before interment of the children. After the children's death, the court entered a written nunc pro tunc order awarding custody of the deceased children to the appellee in accordance with its oral award before their deaths. Thereafter the appellant moved the court to determine the rights of the parties to the custody and burial of the children's remains. Upon a hearing of the motion, the court dismissed the restraining order as moot finding that the interment had been completed before notice of the order. It further held that the appellee had custody of the children and hence had the right to direct the funeral arrangements and burial. This appeal is from those orders and was certified by the trial court for immediate review. *Held:*

1. The trial court by its judgments refused to disinter the bodies of the parties' deceased children over the objection of the mother. We find no error in the rulings.

"Disinterment of a body is not favored in the law. Public policy frowns on the disinterment of a body and its removal to another burial place, and it is the policy of the law, except in cases of necessity or for laudable purposes, that the sanctity

of the grave should be maintained, and that a body once suitably buried should remain undisturbed. While the right to have a dead body remain undisturbed is not absolute, a court will not ordinarily order or permit it to be disinterred unless there is a strong showing that it is necessary and that the interests of justice require it. However, there is no universal rule applicable, each case depending on its own facts and circumstances. . ." 25A CJS 496, § 4 (1). See *Rivers v. Greenwood Cemetery,* 194 Ga. 524 (22 SE2d 134); *Louisville & N. R. Co. v. Wilson,* 123 Ga. 62 (51 SE 24, 3 AC 128).

Also, interment has taken place, and, as the trial court held, the respective right of the parents to participate in the funeral arrangments is now moot.

2. Under the above ruling, it is unnecessary to decide whether the court erred in entering the nunc pro tunc order awarding temporary custody of the children to the appellee.

*Judgment affirmed. All the Justices concur, except Felton, J., who dissents.*

ARGUED JULY 15, 1970—DECIDED SEPTEMBER 10, 1970.

*Strother & Smith, Martha B. T. Smith,* for appellant.

*Sanders, Hester, Holley, Ashmore & Boozer, Robert P. Rowe,* for appellee.

FELTON, Justice, dissenting. In the present case, which is apparently one of first impression in this State, it seems evident that two different issues have been confused and decided together as one, i.e., the custody of the two children while living and the right of burial after their deaths.

In my view of the case, it is unnecessary to decide now whether the appellee mother would have had the right of burial, *assuming that she had temporary custody* at the time of the deaths. In this regard, we note this particular question seems not to have been definitely decided in this State. The general rule in this State seems to be that the right of burial belongs to the surviving spouse, or, if none, to the next of kin, or, if none, to the householder under whose roof the person died. *Pollard v. Phelps,* 56 Ga. App. 408 (1b) (193 SE 102).; 8 E. G. L. 136, Dead Bodies, § 3, and cit. Arkansas recognizes the paramount privilege of burial of a child to be

in the parent to whom custody has been awarded. Robinson v. Robinson, 518 Ark. 526 (237 SW2d 20), cited in 25A CJS 493, Dead Bodies, § 3. "There is no universal rule regarding the right of persons to bury the dead, but each case must be considered in equity on its own merits; and, no matter in whom the right of burial rests, it is in the nature of a sacred trust for the benefit of all who may, from family ties or friendship, have an interest in the remains." 25A CJS 491, Dead Bodies, § 3.

Regardless of the above question, the facts and the law in the present case show that the appellee mother did *not* have temporary custody of the two children at the time of their deaths. Ga. L. 1966, pp. 609, 662 (*Code Ann.* § 81A-158) provides as follows: "(a) Signing.—Except when otherwise specifically provided by statute, all judgments shall be signed by the judge and filed with the clerk. (b) When judgment entered.—*The filing with the clerk of a judgment, signed by the judge, constitutes the entry of such judgment,* and, unless the court otherwise directs, *no judgment shall be effective for any purpose until the entry of the same,* as hereinbefore provided." (Emphasis supplied.) This is in accordance with the law prior to the enactment of the Civil Practice Act. See *Olivet v. State,* 117 Ga. App. 860 (1) (162 SE2d 306) and cit. At the time of the children's deaths, no written custody order had been entered. In its written order entered February 26, 1970, the court stated in part, as follows: "It appearing to the court that the above named case having come on for hearing for alimony and custody of the minor children of the parties on the 17th of November, 1969. After hearing evidence thereon the court re-referred the case to the Juvenile Court of DeKalb County for investigation and report. After receiving said report on February 4, 1970, the court advised counsel for both parties of its decision with reference to the temporary custody of said minor children of the parties which decision is as follows: The temporary custody of the two youngest children . . . [now deceased] is hereby awarded to the mother. The temporary custody of the remaining children . . . is awarded to the father. The question of child support and alimony is deferred for later hearings. The court having informed counsel to pre-

pare order for signature, and subsequent thereto the two youngest children met their death before the court reduced the *oral order* to writing. It is therefore Ordered and Adjudged that said *oral pronouncement* of temporary custody as heretofore stated is hereby made the judgment of this court nunc pro tunc as of February 4, 1970." (Emphasis supplied.) Although the wording of the above order is subject to the construction that the judge considered the award to have been in effect as of the time of its oral pronouncement, nevertheless, under *Code Ann.* § 81A-158 (b) supra, such judgment, in oral form alone, could not be effective *"for any purpose"* until it was entered, unless the court "otherwise directs." There is nothing in the record to indicate that the court had directed that the appellee wife and mother was to have custody prior to the entry of the judgment awarding her such custody. Therefore, at the time of the children's deaths, she did not legally have custody, temporary or otherwise.

Nor could the attempted entry of the judgment nunc pro tunc resolve the issue of custody in the mother's favor. "Generally a judgment entered nunc pro tunc relates back to the time when it should have been entered, and completes the record. *Where there are no intervening equities*, the judgment so entered will sustain a plea of res [judicata] between the parties, as to the matter involved in the litigation." (Emphasis supplied.) *Walden v. Walden,* 128 Ga. 126 (10) (57 SE 323). In the instant case, not only were there many "intervening equities," which are discussed hereinafter, the whole complexion of the custody issue was changed by the deaths from a question of custody of live children, in which the interest and welfare of the children was the sole concern, to the question of the burial rights as to children, which involved the much broader scope of the rights and sensitivities of the children's parents, kinsmen, friends, and society as a whole, which certainly include the appellant natural father of the children. *Code* § 74-106 provides in part as follows: "In cases of separation of the parents, or of the death of one and the subsequent marriage of the survivor, the court, upon writ of habeas corpus, may exercise a discretion as to the possession of the child, looking solely to

his interest and welfare." While this statute may not squarely govern this case, in which the "possession" or disposition is of deceased, rather than living children, it is illustrative of the public policy of this State in favor of the courts' resolving of issues as to custody in cases where the parties are separated and unable to reach an agreement as to possession, such as is the situation here. "In the absence of a clear right or statutory command, courts should not interfere with the possession or control by relatives of the body of a deceased person, but where there is contention the courts will assume jurisdiction and adjudicate its settlement." 25A CJS 493, Dead Bodies, § 3.

The record is replete with "intervening equities" which militate against the nunc pro tunc entry of the judgment, which was, in effect, an attempt to award custody of the children posthumously. The evidence shows that on Thanksgiving Day, 1969, the appellee, armed with nothing but an *oral* custody pronouncement, packed her bag and took the two now deceased children out of town, saying that she would return the next day, whereas, in fact, she kept them out of town and incommunicado from the appellant and the children's older sisters until the time of their death, some two and one-half months later. The father and the sisters were deprived by this action, as well as the subsequent conduct of the appellee, from ever talking to or seeing the children again, either in life or in death. When appellant received word of the tragic death of his children and went to the death scene to exercise his parental burial rights, he was treated hostilely by appellee's family; was told, not consulted with, about the funeral arrangements; was told that the bodies were in the possession of the wrong funeral director, and was told that the funeral was to be at 2 p.m., whereas it was, in fact and unknown to him, conducted at the unusual and unseemly hour of 7:30 a.m., more or less, thereby preventing his or his other children's attendance at the funeral. The "arrangements" made by appellee through her family and attorney included burying the two children in one coffin (for economy purposes) in a town far removed from the home of either party, especially appellant's, at a secret time. The record shows that the appellant did everything reasonably possible

to assert his parental rights in the circumstances. Appellee and her family contend that he did not offer any objections to their stated arrangements and that he had said that that was no time for dissension. Appellant denied this vehemently, but, even if it was true, it would not preclude his attempt to assert his rights later on, as he did. His attorney had counseled him not to make any trouble, since the issues involved in the divorce and child custody proceeding were pending and there was a great deal of bitterness and hostility between the parties. Evidently the appellant made some effort toward asserting his legal rights, because some of the appellees criticized him for thinking of his legal rights "at a time like this." Even if he tentatively agreed to their plans, however, he was entitled to change his mind later. The record shows that he communicated with his attorney immediately upon his return to Atlanta from the death scene (in the middle of the night) and obtained a restraining order against his wife, forbidding the interment, at the first opportunity the next morning. Although the appellee herself was hospitalized and did not receive notice of said order, her counsel was notified of it personally by telephone by appellant's counsel shortly after it was issued and a day before the scheduled interment. He declined to have it read to him, saying that he couldn't accept service for the plaintiff, and requested a copy through the mail. After the actual interment had taken place, appellant tried unsuccessfully several times to determine the time and place of interment and was refused. He was finally able to obtain this information only from the Randolph County judge who had granted him the second restraining order, this one against the funeral home, which as it developed and through no fault of the appellant, took effect after the actual interment. Finally, after the appellant and his surviving children had exhausted every legal means of ascertaining the time of the proposed interment, and to stop it, the appellee, who, through her own efforts and those of her family as her agents, had successfully prevented appellant and his children from participating in the funeral, as well as the arrangement of it, had the audacity to issue a crass verbal castigation against the appellant and his surviving children for

not having gone to the funeral. This is not intended as a critical judgment, but to illustrate the mother's unfortunate attitude and mental condition.

The trial court, in the order appealed from, treated the issue as moot, since the children's remains had already been interred. . This ruling overlooks the second prayer of appellant's petition or motion, to wit: "To grant such other and further relief as this court deems equitable and proper as prayed for in his 'Petition for Restraining Order.'" One of the prayers of said petition for restraining order was for the court to "make determination of *final* interment of deceased minor children to equity of all parties." (Emphasis supplied.) While the issue of the *temporary* resting place may have been rendered moot by the unauthorized, illegal, and unilateral actions of the appellee and her agents, this is not determinative of the issue of the *final* resting place, which a reference to the appellant's pleadings reveals he is seeking. Since the interment had already taken place when appellant filed his last motion, the only relief which could be "other and further relief" would be disinterment and reinterment, giving regard to the rights, wishes and sensitivities of the appellant father and the three sisters of the deceased children.

The right to request such a disinterment is in the owner of the right of burial. *Rivers v. Greenwood Cemetery*, 194 Ga. 524 (22 SE2d 134). That the appellee did not have the exclusive right of burial over the appellant has been shown hereinabove. While disinterment is not an absolute right, but a matter of discretion for a court of equity, it has been permitted in cases of necessity, for laudable purposes and in the interest of justice. "There is no universal rule applicable, each case depending on its own facts and circumstances; and for a valid reason, on application by a proper person, the removal of a body will be permitted. . . Whether disinterment should be permitted may depend on the rights and feelings of those entitled to be heard by reason of relationship or association; . . . [and] the desires and motivations of the decedent and the surviving relatives will outweigh flexible religious custom and usage." 25A CJS 497, Dead Bodies, § 4 (1).

In this State, as well as generally, burial is a right as well as a duty. *Rivers v. Greenwood Cemetery,* supra. "One court has stated that the right of burial includes: (1) right to the custody of the body, (2) right to have the body in the condition it was left by death, without mutilation, (3) right to have the body treated with decent respect, without outrage or indignity thereto, and (4) right to bury the body without interference." 8 E. G. L. 137, Dead Bodies, § 3. "The right of burial includes ordinarily the right to determine the *time, manner,* and *place* of burial." 25A CJS 495, Dead Bodies, § 3. It would be difficult to imagine a case in which any more necessity, laudable purpose, or interest of justice exist for disinterment and reinterment than in the present case. Throughout the whole record there is detectable an undercurrent of diabolical scheming to have the deceased children's remains interred where the appellee wished, with little regard for the wishes, sensitivities or legal rights of others, less regard for the proprieties of a Christian burial, and no regard whatsoever for the authority of a prima-facie valid restraining order by a court of competent jurisdiction. Even if the jurisdiction was in question, moreover, appellee and/or her attorney acted at her peril in refusing to comply therewith until that issue could be resolved.

The appellant is entitled to be heard as to his wishes in the matter as the natural parent of the deceased children, just as the appellee's wishes must be considered. The court is authorized under the law to order disinterment, reinterment at such place and in such manner as may be deemed equitable considering the rights and wishes of all concerned and such other and further relief as the court deems equitable and proper, as prayed for by the appellant. While it is conceivable that the court might deem it equitable not to disturb the remains, nevertheless, the case should be tried on the correct theory, giving due consideration to the rights and equities of the appellant father and the sisters, friends and other relatives of the deceased children, rather than on the erroneous theory of the appellee's sole right of burial based on a posthumous award of custody, which never attained the efficacy of a judgment by being entered.

The judgment of the trial court should be reversed with direc-

tion that the case be tried consistently with what is said here-inabove, especially when the conduct of the wife and mother in procuring the interment under the circumstances stated is infinitely more unjust, reprehensible and deplorable than the decent, human and justifiable relief sought by the appellant for himself, his living children, friends and society.