Daniel Charles **TULLY** et al.,
Plaintiffs,

v.

Dr. Eula H. **PATE**, Defendant.

Civ. A. No. 72-155.

United States District Court,
D. South Carolina,
Greenville Division.

Dec. 21, 1973.

M. A. McAlister, Anderson, S. C., for plaintiffs.

Theodore A. Snyder, Jr., Greenville, S. C., for defendant.

## ORDER

### ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HEMPHILL, District Judge.

This lawsuit, essentially a fight between an estranged husband and his sister-in-law over the bodies of his dead

children, shocks the sensibilities of this court. The court has suspicioned the forum is being used for vindictive pursuit rather than a place where justice is sought. The court doubts the existence of the jurisdictional amount necessary to give diversity jurisdiction [1] but the allegations of the complaint control at this point.[2] The motion spotlights the issues of fact, existent or nonexistent.

Plaintiffs include Daniel Charles Tully, the father of five children, and Yvonne Therese Tully and Dana Colleen Tully, two minor children of plaintiff-father. A third minor child, Leah Ann Tully, was voluntarily dismissed from this suit as a party. Two other children, Renata Marie Tully and Daniel Charles Tully, Jr., are dead and the disposition of their bodies is the subject of this suit.

This case was commenced on February 3, 1972 by the filing of a complaint against defendant, seeking damages on two theories: (1) malicious, willful, deliberate, and intentional interference with burial rights of plaintiff-father and (2) malicious, willful, deliberate and intentional prevention of attendance by all plaintiffs at the funeral of the two deceased minor children. Defendant is the sister of plaintiff-father's estranged wife, Valaria Ann Pate Tully, and allegedly handled the burial arrangements for the two deceased minor children.

Jurisdiction is based on diversity of citizenship. Plaintiffs are all citizens and domiciliaries of the State of Georgia. Defendant is a citizen and resident of the State of South Carolina. Plaintiffs ask damages in excess of the jurisdictional amount of $10,000, exclusive of interest and costs.

Discovery proceedings continued up to and including August 30, 1972, in the process of which numerous depositions were taken by the parties, interrogatories were filed by defendant and answered by plaintiffs, and certain Requests for Admissions were filed by both defendant and plaintiffs. All of these requests dealt with the genuineness of certain documents from Case No. 53,038 in DeKalb County, State of Georgia, which was a divorce action between Valaria Ann Pate Tully and Daniel Charles Tully.

On August 30, 1972, defendant moved this court for an order granting summary judgment in her favor. As to plaintiff-father's cause of action for malicious, willful, deliberate, and intentional interference with plaintiff-father's alleged burial rights, defendant contends that she is entitled to summary judgment as a matter of law on three grounds:

(1) Burial rights over the bodies of the minor children of the estranged parents are said to belong to the mother, who allegedly had legal custody of the children and who exercised the burial rights through her alleged agent, her sister, the defendant. It is contended that plaintiff-father, who allegedly did not have legal custody, resultingly had no right to make or participate in the funeral and burial plans for his minor children. Defendant argues that no cause of action exists for alleged interference with plaintiff-father's purported burial rights.

(2) Plaintiff-father has allegedly litigated the issue of who had burial rights in the courts of Georgia to a final decision, in a divorce action between him and his wife. Defendant contends that plaintiff-father is now estopped by that judgment from further litigating the issue.

(3) The courts of Georgia have rendered a final decision that plaintiff-father had no burial rights. This judgment is presented as res judicata as to plaintiff-father and therefore a bar to this cause of action.

As to all of plaintiffs' causes of action for malicious, willful, deliberate, and in-

1. 28 U.S.C. § 1332.

2. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L. Ed. 845 (1938).

tentional prevention of attendance at the funeral of the two deceased minor children, defendant contends that she is entitled to summary judgment as a matter of law on the ground that no plaintiffs have suffered injuries by their nonattendance and therefore no measurable damages can be awarded.

Plaintiff-father resists defendant's motion for summary judgment as to his first cause of action on the grounds that:

(1) His wife, the sister of defendant, did not have legal custody of the two minor children at the time of their deaths and therefore did not have exclusive burial rights over the bodies of the two deceased minor children.

(2) The divorce action between plaintiff-father and his wife, although reaching a final decision in the Georgia Supreme Court, did not involve the issue of who had burial rights over the bodies of the two deceased minor children and therefore it is uged that no estoppel by judgment exists.

(3) Since no estoppel by judgment exists, the judgment is not res judicata as to plaintiff-father's cause of action against defendant, the sister of plaintiff-father's wife in the divorce action.

All plaintiffs resist this motion as to the second cause of action on the grounds that there are genuine issues of material facts existing, thus precluding entry of summary judgment.[3]

On February 28, 1973, the court heard oral argument on the motion and upon the record before it, determines:

## STATEMENT OF FACTS

1. In DeKalb County Superior Court, State of Georgia, Civil Action No. 53,038 was begun by the filing of a Petition for Divorce by wife, Valaria Ann Pate Tully, against husband, Daniel Charles Tully, on August 27, 1969, and was served upon the defendant on August 28, 1969, seeking custody of all of the five (5) minor children of the parties. No Rule Nisi was attached.

2. Defendant-husband filed his answer and cross complaint in said action on September 26, 1969, containing a demand for a jury trial and seeking custody of the five minor children of the parties.

3. On October 22, 1969, plaintiff filed an amendment to her petition for divorce and a Rule Nisi Order was signed by the judge setting down a hearing for November 17, 1969.

4. At the hearing on November 17, 1969, the matter of custody of all of the children was referred to the juvenile authorities for investigation and report back to the DeKalb County Court, the three older children expressing their desire to the judge to remain with the defendant-father.

5. During the pendency of the juvenile investigation, on November 27, 1969, Thanksgiving Day, plaintiff, Valaria Ann Pate Tully, apparently without any court order, either oral or written awarding her temporary custody of any minor children, left the home of the parties with the younger two children, Renata Marie and Daniel Charles, Jr., stating that she would return on Friday, November 28, 1969. She did not.

6. On February 4, 1970, counsel for defendant called Judge Hubert C. Morgan of the DeKalb County Superior Court inquiring as to whether or not the juvenile investigation had been completed and was told that the report had just come in, that he intended to award custody of the two minor children, Renata Marie and Daniel Charles, Jr., to the mother, Valaria Ann Pate Tully, the custody of the three older children to the father, Daniel Charles Tully, and requested that counsel for defendant be in

3. Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) ; Britt v. Damson, 334 F.2d 896 (9th Cir. 1964), cert. denied, 379 U.S. 966, 85 S. Ct. 661, 13 L.Ed.2d 560 (1965).

touch with counsel for plaintiff to work out a temporary arrangement as to child support, etc. Counsel for defendant was not told to enter an order on custody at that time but merely told to be in touch with opposing counsel and try to work out the details to be contained in such an order. They met on February 5, 1970 for such purpose but no agreement could be reached.

7. Prior to any written order awarding custody of the two younger children to the mother, they died as a result of a fire in Highlands, North Carolina, on February 8, 1970. Two children of another sister of plaintiff to the divorce action and the grandmother of all of these children also lost their lives in the same fire and Valaria Ann Pate Tully was seriously injured and confined in the Highlands-Cashiers Hospital in Highlands, North Carolina.

8. At approximately 9:30–10:00 A. M. on February 8, 1970, the defendant, Daniel Charles Tully, was notified of the death of his children by a brother-in-law, some seven to eight hours after the fire.

9. Immediately thereafter, Daniel Charles Tully, journeyed to Athens, Georgia from Atlanta, to pick up his three older children and then to Highlands, North Carolina to assist in the funeral and burial arrangements for his children and to see Valaria Ann Pate Tully, who they understood was in critical condition and not expected to live.

10. Upon arriving in Highlands, he was confronted by members of his wife's family, including defendant in this case, Dr. Eula H. Pate, and was told that the funeral and burial arrangements had already been made by her, pursuant to directions of his estranged wife. He was further told that Valaria Ann Pate Tully wished the children buried in the Pate family plot in Fort Gaines, Georgia, that the funeral would be at 2:00 P.M. on February 10, 1970 and that the bodies of the children were at the Bryant Funeral Home. He was also told that he had no legal rights and was asked to leave Highlands.

11. Upon the return to Atlanta from Highlands of Daniel Charles Tully, he immediately contacted his attorney who was representing him in the divorce action regarding his legal rights. The attorney advised him that she was not sure what his rights were but she was sure that he had some as there was no custody order and no final decree of divorce. Immediately upon the opening of the court in DeKalb County on February 9, 1970, Mrs. Martha B. T. Smith, attorney for Mr. Tully, contacted the court and was told by Judge Hubert C. Morgan that Mr. Tully would not be in violation of any order if he tried to get the remains of his children. Immediately thereafter, said attorney was in contact with Mr. Harry Neal of Neal & Potts Funeral and/or Bryant Funeral Home and/or Bryant Funeral Chapel, relating her conversation with Judge Morgan to Mr. Neal.

12. Various conversations took place that morning between Mrs. Smith, Mr. Neal, Mr. Hugh Peeler of Bridges Funeral Home of Athens, Georgia (the funeral home contacted by Mr. Tully to handle the bodies of his children), and when it became apparent that Mr. Neal was not going to hold the bodies in North Carolina, Mrs. Smith then prepared an Application for a Temporary Restraining Order and submitted it to Judge Hubert C. Morgan of the DeKalb County Superior Court and on February 9, 1970 at approximately 3:30 P.M., the judge signed a temporary restraining order against further authorization of funeral and burial of said children, a hearing on which was set for 9:00 A.M., on February 11, 1970.

13. Mrs. Smith then notified counsel for Valaria Ann Pate Tully, Mr. Robert Rowe, that a restraining order had been signed by the judge and asked if he desired to have it read to him over the telephone whereupon he declined to have it read and requested it be sent in the mail to him. During that same afternoon and evening of February 9, 1970, Mr. Tully, Glenn Strother, an attorney, and Mrs. Martha B. T. Smith, placed a

call to Lunsford Funeral Home, Cuthbert, Georgia, to whom the remains of said children had been shipped by the North Carolina funeral home(s) and advised the Lunsford Funeral Home of the restraining order against Mrs. Tully. When asked if they would honor the DeKalb County restraining order, the request was refused by the Lunsford Funeral Home in the person of Mr. Elton White, whereupon Mr. Strother stated that a restraining order would be obtained against him from the judge in their jurisdiction.

14. Thereafter a Petition for Restraining Order was prepared against the interment of said children, naming Elton White and James M. Ragan, d/b/a Lunsford Funeral Home, Cuthbert, Georgia, as defendants and pursuant to a telephone call to the Honorable Walter Geer, Judge, Randolph County Superior Court, Daniel Charles Tully left Atlanta approximately 12:00 midnight on February 9, 1970 in order to be at Judge Geer's home at 8:00 A.M. on February 10, 1970 to have the restraining order signed, under the assumption that the children were to be buried at 2:00 P.M. on February 10, 1970 as told to him by defendant herein.

15. Said restraining order was signed by Judge Geer and filed in the Randolph County Superior Court at approximately 10:30 A.M. on February 10, 1970 and served upon the funeral home at approximately 10:45 A.M. on February 10, 1970.

16. Unknown to Daniel Charles Tully, the father of said deceased minor children, at the time of the signing, filing, and service of said restraining order upon the Lunsford Funeral Home, said children had already been interred, the hour having been changed sometime the evening before, notwithstanding that Elton White of Lunsford Funeral Home had been requested to call the father or his lawyer back in the event of any changes.

17. The restraining order from DeKalb County, Georgia, came on for hearing on February 11, 1970, before the Honorable Hubert C. Morgan, Judge, Superior Court, DeKalb County, and counsel for both plaintiff and defendant appeared, the said plaintiff's attorney advising the court that his client was critically ill, confined to the hospital in Highlands, North Carolina, that he had been unable to reach her to notify her of the restraining order and she could not, therefore, be there, whereupon Judge Morgan ordered him to North Carolina to see his client.

18. Thereafter on February 26, 1970, Judge Morgan entered an order awarding temporary custody of the two minor children, then deceased and interred, to Valaria Ann Pate Tully, the mother of said children, nunc pro tunc as of February 4, 1970, the date the juvenile investigation report was filed, recommending that custody of the two youngest children be awarded to the mother.

19. Because the continued illness of Valaria Ann Pate Tully prevented her from attending court for the hearing on the restraining order, the hearing was reset at least two times and finally plaintiff and defendant were before the court on March 6, 1970, at which time the court declined to hear arguments on the restraining order and ordered counsel to submit briefs and affidavits by Friday, March 12, 1970, and stated he would sign a Certificate of Immediate Review after these briefs and affidavits were submitted.

20. Thereafter, defendant to the divorce action, Daniel Charles Tully, filed a special motion to determine the rights of plaintiff and defendant during the pending divorce action as to the burial of the children, and defendant's brief was filed with the court on March 16, 1970.

21. On March 17, 1970 the court entered its order, finding the restraining order moot and no further order required thereon, and having found that the deceased minor children had already been interred, entered its order stating that Valaria Ann Pate Tully had the remains of said children and had the right

to authorize the interment and said interment would not be disturbed.

22. Certificate of Immediate Review was granted by Judge Morgan and defendant thereafter appealed to the Supreme Court of Georgia, enumerating three errors:

1. The court erred in denying appellant all right to custody and burial of his deceased minor children during a pending divorce suit. . . .

2. The court erred in arbitrarily ruling the question of determination for an equitable burial site for the deceased minor children of the parties was moot. . . .

3. The court erred in awarding exclusive right of custody and burial of deceased minor children to only one parent during a pending suit for divorce. . . .

23. On September 10, 1970, the Supreme Court of Georgia affirmed the judgment of the Superior Court of DeKalb County regarding the disinterment of said children, finding by the majority opinion that the bodies of the children would not be disinterred, and further:

1. . . . . Also, interment has taken place and as the trial court held, the respective rights of the parents to participate in the funeral arrangements is now moot.

2. Under the above ruling it is not necessary to decide whether the court erred in entering the nunc pro tunc order awarding temporary custody of the children to the Appellee. Tully v. Tully, 226 Ga. 653, 177 S.E.2d 49 (1970).

24. After the ruling from said Supreme Court, defendant in the divorce action, Daniel Charles Tully, filed an Application for Amendment to his answer and cross complaint wherein he prayed for award of the *permanent* custody of all of the minor children, and if the two children were dead, then to be awarded the remains of his children, and for such other and further relief as the court deemed just. Said amendment was allowed to be filed by court order dated March 16, 1971.

25. The case came on for jury trial on April 5, 1971 but the matters in the amended cross complaint and answer referred to in paragraph 24 above were not submitted to the jury and neither were they ruled on by the court, were not a part of the jury verdict, and were not included in the Final Judgment and Decree of Court in the decision dated January 5, 1972.

26. No further appeal was taken from the jury verdict on April 5, 1971 or the final order and decree entered on January 5, 1972, subject however to Mr. Tully's right to attack said judgment, if he so desires, for fraud and conspiracy in its procurement.

## ISSUES

From the foregoing undisputed facts (there are other unstated disputed facts), this court must face the following questions:

1. A. Is intentional interference with burial rights a tort?

   B. Is intentional interference with the privilege or right to attend the funeral of a member of one's immediate family a tort? (What duty, as to the bodies of the children, did the estranged wife owe the husband?)

2. Under conflict of law principles, which state law should be applied: (A) North Carolina; (B) South Carolina; or (C) Georgia?

3. As to the alleged tort of intentional interference with burial rights:

   A. Did the mother have legal custody of the deceased children at the time of their deaths?

   B. Does the parent to a pending divorce action, allegedly having legal custody of children at the time of their deaths, also have exclusive burial rights over their bodies?

C. Is the parent to a divorce action, in which custody of certain children was awarded to the other parent, estopped by the judgment in the divorce action from bringing this tort action, against the "agent" of the .parent having legal custody, for intentional interference with alleged burial rights over the bodies of the deceased certain children?

D. May the alleged "agent" of the parent allegedly having legal custody of certain children and who handled the burial arrangements for the bodies of the deceased certain children, assert the judgment in a divorce action between the parents of the deceased certain children, as a defense of res judicata?

4. As to the alleged tort of intentional interference with the privilege or right to attend the funeral of a member of one's immediate family:

A. Is it necessary for plaintiffs to prove actual physical injury as a result of the alleged tortious action of defendant in order to recover damages?

B. Are there genuine issues of material fact remaining so as to preclude summary judgment on this alleged cause of action?

## DISCUSSION OF TORTS

In answering both parts of the first question, this court must, on the threshold, decide whether the alleged causes of action are actionable torts. This court has searched through the encyclopediae of law: Corpus Juris Secondum; American Jurisprudence Second; and American Law Reports First, Second, and Third; to no avail. Thus, it appears to this court that this case is one of first impression. In deciding this novel question of law, this court refers to the very basic principles of tort law.

▇ A course of action constitutes a prima facie tort if there is an intentional interference with the property rights of one by another without justifiable cause.

▇▇ Plaintiff-father alleges in the complaint that defendant intentionally interfered with his burial rights over the bodies of his deceased children without justifiable cause. All plaintiffs allege in the complaint that defendant intentionally interfered with their privilege or right to attend the funeral of two members of their immediate family without justifiable cause.

Two separate causes of action for two different torts are being urged by plaintiffs. Since all the elements of a prima facie tort are alleged, this court will recognize these new torts. However, this is not to be taken as any preemption of issues involving the merits of each cause of action set forth in this particular case.

## CONFLICT OF LAWS

Another threshold question is which state law is to be applied by this federal court, sitting in the District of South Carolina, in this diversity of citizenship action between plaintiffs, all citizens of Georgia, and defendant, a citizen of South Carolina. These newly recognized torts are alleged to have occurred as ongoing actions covering three states. The alleged tortious actions began in North Carolina, continued through South Carolina, and culminated in Georgia.

Neither party urges that North Carolina state law be applied. Defendant argues that South Carolina state law should be applied. Plaintiffs contend that Georgia state law is applicable. Since no one suggests that this court apply North Carolina state law, the choice is left between the laws of South Carolina and Georgia.

A conflict of laws problem is usually resolved under one of two theories: (1) the territorial approach; or (2) an interest analysis.

The territorial approach calls for the application of the law of the state in

which the tort allegedly occurred. This theory is not helpful here because the alleged tortious actions extended over three states.

■ An interest analysis calls for an examination of all the interests of each of the states whose laws are capable of being applied. This approach is useful here.

There are two reasons why South Carolina law should be applied. The first reason is the interest of South Carolina in protecting its citizens against inordinately large verdicts. Damages in excess of two million dollars ($2,000,000.-00) are requested. The second reason is the ease of applying South Carolina law because of this court's familiarity therewith.

There are also two reasons why Georgia law should be applied. The first reason is that the bodies of the deceased children are already interred in Georgia. Plaintiff-father, if successful in this action as to the determination of his alleged burial rights, will attempt to have the bodies removed to another resting place elsewhere in Georgia. Thus, regardless of the outcome of this lawsuit, the final gravesite of two deceased Georgia citizens will be somewhere in the state of Georgia. The second reason is that Georgia has an interest in maintaining the integrity of its judicial decisions in that some of the parties herein have already been involved in closely related litigation having a bearing on the outcome of this case.

■ In analyzing the different interests of the states whose law is urged to be applied, the court is not to participate in a numbers game by casting its decision in favor of the state with the most reasons enumerated. Instead, the court is to weigh the cumulative effect of all the interests of each state and determine which state will suffer the greatest impact from the decision. This court finds that Georgia has the greatest stake in the outcome of this litigation and therefore its state law will be applied.

Two very compelling interests are set forth in Georgia's favor: first, the final resting place of two of its citizens; second, the integrity of its judicial decisions. The two reasons set forth for applying South Carolina law are not as weighty. The first reason, the protection of its citizens against large verdicts, is a consideration to which this court cannot give any weight. The main purpose for establishing diversity of citizenship jurisdiction in the federal courts was to prevent such a consideration from entering into the decision of a court. The second reason, the ease of applying South Carolina law, is entitled to little, if no weight. Although this judge has been a life-long South Carolina lawyer and unfamiliar with Georgia law, by design and not by chance, except to note that it is a mish-mash of Anglo-American common law, the French Code Napoleon, and Spanish civil law, this court will try to apply Georgia law to the best of its ability.

## CUSTODY AND BURIAL RIGHTS

These two issues are relevant only as to the first alleged tort of intentional interference with burial rights. Although separate and distinct, they must be analyzed together because of their close relationship and treatment in the Georgia courts. On February 4, 1970, counsel for plaintiff-father called Judge Hubert C. Morgan of the DeKalb County Superior Court inquiring as to whether or not a certain juvenile investigation had been completed and was told that the report had just come. The court stated that it intended to award custody of the two minor children, Renata Marie and Daniel Charles, Jr., to the mother, Valaria Ann Pate Tully. Prior to any written order being entered awarding custody of the two younger children to the mother, they died in the fire at defendant's home in Highlands, North Carolina on February 8, 1970. On March 17, 1970, the court entered its order, finding that: (1) Valaria Ann Pate Tully had possession of the remains of said children; (2) she had the right to

authorize the interment. The court therefore concluded that said interment would not be disturbed. Certificate of Immediate Review was granted by Judge Morgan and defendant thereafter appealed to the Supreme Court of Georgia, enumerating as errors that the court erred in awarding exclusive right of (1) custody and (2) burial of deceased minor children to only one parent during a pending suit for divorce. On September 10, 1970, the Supreme Court of Georgia affirmed the judgment of the Superior Court of DeKalb County, finding that: (1) "it is unnecessary to decide whether the court erred in entering the nunc pro tunc order awarding temporary custody of the children to the appellee." (2) "Interment has taken place, and, as the trial court held, the respective rights of the parents to participate in the funeral arrangements is now moot." Tully v. Tully, supra.

■ The conclusion is inescapable that Valaria Ann Pate Tully had legal custody of the deceased minor children at the time of their deaths under Georgia law. It is not material whether such custody was temporary or permanent. At the time of the deaths of the deceased minor children, the question of permanent custody became moot. The issue of custody is not as crucial by itself as is its effect on the issue of burial rights. As the Georgia courts decided, albeit in a cursory manner, Valaria Ann Pate Tully, having legal custody, although being awarded nunc pro tunc, had the right to authorize the interment and the issue whether plaintiff-father herein had any concurrent right was moot. It follows from these decisions that plaintiff-father effectively had no burial rights and that defendant, Dr. Eula H. Pate, was legally acting as an agent under authorization of Valaria Ann Pate Tully in carrying out the burial arrangements for the deceased minor children.

The reason for such a rule is plain. Given the usual strained relations between divorced or separated parents, the chances are great for disagreement on burial plans. Given the bitterness between the parents in this case, the possibility of agreement between them was extremely remote. In such circumstances one or the other has to make the decisions or else a stalemate would result. The logical conclusion is that the parent having custody should also have the right to make the funeral and burial arrangements.

This conclusion is practical as well as logical. The courts are saved from extended litigation over dead bodies, and from having the merits or demerits of the causes of the separation and custody re-litigated. The parents are spared having the misfortune of death turned into an instrument for inflicting abuse by one upon the other. The dead are accorded a modicum of respect, rather than being punted from one side to the other.

## ESTOPPEL BY JUDGMENT

The issue as to which parent had the burial rights over the two deceased children was raised and resolved in a divorce action against the plaintiff-father herein. He now seeks to relitigate the issue in a tort action alleging that the defendant agent interfered with his burial rights. The earlier proceedings in the Georgia courts, however, had held that the issue was moot and that, effectively, he had no such burial rights.

■ The courts of Georgia have uniformly held that a former judgment is a bar to a second action, even though the defendant in the second action was not a party to the first. All that is required is that the party against whom the defense is asserted has been a party to the former action, that the same issue was raised therein, and that the issue was decided adversely to him. Alexander v. Sutlive, 3 Ga. (3 Kelly) 27 (1847); Gray v. Hodge, 50 Ga. 262 (1873); Harris v. Amoskeag Lumber Co., 101 Ga. 641, 29 S.E. 302 (1897); Howard v. Perkins, 229 Ga. 279, 191 S.E.2d 46 (1972).

■ Plaintiff-father has litigated his way through the Georgia courts on the

questions of custody and burial rights. The courts of that state held that he, not having legal custody, effectively had no rights to determine the funeral and burial arrangements. He should not be allowed to relitigate those issues here.

■ The fact that the plaintiff-father has changed his cause of action from one for a restraining order and declaratory relief to one for damages is immaterial. Changing the theory of the action is of no avail where the same matter has been previously litigated and decided. Davis v. McKinnon & Mooney, 266 F.2d 870 (6th Cir. 1959).

## RES JUDICATA

The trend of Georgia decisions indicates that it favors early termination of litigation, especially where the issues have been once tried. Georgia follows the decision in Roadway Express, Inc. v. McBroom, 61 Ga.App. 223, 6 S.E.2d 460 (1939). That case held that once a prior litigant had contested a given issue, he was bound by the result, regardless of who the parties were to the prior litigation. The court reasoned:

> [W]here the liability, if any, of a principal or master to a third person is purely derivative and dependent entirely on the principle of respondeat superior, a judgment on the merits in favor of the agent or servant, or even a judgment against him, insofar as it fixes the maximum limit of liability, is res judicata in favor of the principal or master though he was not a party to the action. This rule is only an exemplification of the broader rule by which one whose liability is wholly derivative may claim the benefit of a judgment in favor of the person from whom his liability is derived. . . . Id., 6 S.E.2d, at 462.

■ This rule should apply regardless of whether the person against whom the plea is asserted was a proponent or a defendant on the issue litigated.

■ The facts of this case meet the above test. Defendant here was acting throughout as the agent of Valaria Ann Pate Tully, who was a party to the prior action. Mrs. Tully, the mother of the two deceased children, was the principal. She testified on deposition that she instructed defendant to make the funeral and burial arrangements for her. She gave defendant certain instructions, including some in writing. She testified further that after the burial, defendant reported to her in detail what actions had been taken. Mrs. Tully swore that upon receiving the report she approved it in every respect.

The law only requires that the parties *or their privies* be the same. It is clear that an agent is in privity with her principal for the purposes of this rule.

The undisputed facts here show that the necessary privity is present as a matter of law, and that this defendant is entitled to prevail on her plea of res judicata.

There is no doubt that this rule is consistent with the policy of ending litigation after the first full consideration of the merits of a particular issue. The rule should properly be applied here. The plaintiff has tried the identical issues of custody and burial rights in the courts of Georgia. He now attempts to go back over the same ground in South Carolina. Nor is he necessarily finished here. If this court does not apply the rule to end this litigation, he may well continue until he has sued every member of the Pate family, and every agent any of them may have employed. The time has come for an end to this litigation. Mr. Tully has had his day in court. He should not be allowed back into court in South Carolina.

In order to establish the claim for intentional interference with burial rights, asserted in the complaint, plaintiff-father must establish that he had burial rights. It has been effectively determined that he had none; therefore, the acts of defendant were not actionable. This first cause of action must fail and summary judgment must be granted.

### INJURY

The following discussion is pertinent only to the alleged tort of intentional interference with the privilege or right to attend the funeral of a member of one's immediate family.

In cases of intentional torts, the modern trend does not require physical impact or injury for recovery. But the cases do require *severe emotional distress*. 38 Am.Jur.2d 10, Fright, shock, etc. § 7.

The Restatement, Torts 2d, § 46(1) states:

> One who by extreme and outrageous conduct intentionally or recklessly causes *severe emotional distress* to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. (Emphasis added).

Prosser, Law of Torts, (3d ed. 1964), at 51, states:

> The emotional stress must in fact exist, and it must be severe. . . .

Georgia has recognized the principles of recovery for damages for mental pain and suffering, mental anguish, emotional trauma, and other such injuries, as pertains to intentional interference with proper burial, proper funeral, etc. See Wright v. Hollywood Cemetery Corp., 112 Ga. 884, 38 S.E. 94 (1901); Jacobus v. Congregation of Children of Israel, 107 Ga. 518, 33 S.E. 853 (1899).

Georgia has likewise recognized the recovery of actual and punitive damages for other torts not involving bodily injury. It is elemental in the law of Georgia to allow recovery for criminal conversation, alienation of affections, slander, libel, and malicious prosecution, all of which such torts, in essence, are injuries involving mental pain and suffering, and are not usually accompanied by physical bodily injury.

The mental pain for which recovery is permitted will vary in degrees, depending upon the case of attachment by the injured party in thought and act during the life of the deceased.

To require as proof of severe emotional stress, a physical manifestation in order to enable recovery would be a harsh rule. The court must necessarily deal with the particular person involved, his attachment to the deceased, his sentiments, and his general psychological makeup and outlook. In this particular case, the mere fact that plaintiffs have not been put in bed and gotten tranquilizers from their doctor in order to prove that they have suffered, should have no bearing whatever on their right to recover damages. Who can say but plaintiffs themselves what their suffering has been, and the extent and severity of such anguish and anxiety over what has occurred, especially in light of the fact that plaintiffs did not even know for a certainty that the children were, in fact, dead, brought about by the manner in which defendant acted in getting them into the ground.

It would be difficult for one who has not borne a child or been a parent to equate mental pain and suffering by a rule laid down in a law book. One would have to suffer the same trauma, anguish, anxiety, and emotion in order to be able to understand the feelings of plaintiff-father and plaintiff-minor children in this case. Plaintiff-father not only had the responsibility of caring for his minor plaintiff children and providing their necessaries, but also of comforting and bringing solace to his daughters in their grief at the loss of their brother and sister.

■ In this case, since plaintiffs have alleged that the wrong is intentional, defendant should not be heard to say that the hurt may not be recompensed, because she could not fairly have been able to apprehend the results or because plaintiffs have not taken tranquilizers, seen a doctor, broken out in a rash, or had other outward manifestations of severe emotional distress.

### GENUINE ISSUES OF MATERIAL FACT REMAINING

This court, recognizing a cause of action for the alleged tort of intentional

interference with the privilege or right to attend the funeral of a member of one's immediate family, is left with genuine issues of material fact which, in view of the conflicting depositional evidence, cannot, and should not, be resolved by this court alone.

It is undisputed that plaintiffs had a right, or at least a privilege, to attend the funeral of the deceased minor children. It is a genuine question of fact whether there was an intentional interference by defendant with such right or privilege of plaintiffs. Because of the conflicting evidence, it is an issue for the jury to weigh the credibility of the various witnesses in order to determine whether or not there was intentional interference. It is also a genuine question of fact whether plaintiffs suffered severe emotional distress sufficient to warrant an award of damages, both actual and punitive. Only the jury, armed with the testimonial complaints of plaintiffs, can resolve the issue as to the extent and severity of the injury to plaintiffs.

Thus it is clear that there are genuine issues of material facts to be resolved and therefore, as a matter of law, defendant is not entitled to summary judgment on the second cause of action.

### CONCLUSIONS

From the foregoing undisputed facts, this court has reached the following conclusions of law:

1.  A. Intentional interference with burial rights is a tort.

    B. Intentional interference with the privilege or right to attend the funeral of a member of one's immediate family is a tort.

2.  Under conflict of law principles, Georgia state law should be applied in this case.

3.  As to the alleged tort of intentional interference with burial rights:

    A. The mother had legal custody of the deceased children at the time of their deaths.

    B. The parent to a pending divorce action, having legal custody of children at the time of their deaths, also had exclusive burial rights over their bodies.

    C. The parent to a divorce action, in which custody of certain children was awarded to the other parent, is estopped by the judgment in the divorce action from bringing a tort action, against the agent of the parent having legal custody, for intentional interference with alleged burial rights over the bodies of the deceased certain children.

    D. The agent of the parent having legal custody of certain children and who handled the burial arrangements for the bodies of the deceased certain children, may assert the judgment in a divorce action between the parents of the deceased certain children as a defense of res judicata and therefore summary judgment must be granted to defendant on this first cause of action.

4.  As to the alleged tort of intentional interference with the privilege or right to attend the funeral of a member of one's immediate family:

    A. It is not necessary for plaintiffs to prove actual physical injury, only severe emotional distress, as a result of the alleged tortious action of defendant in order to recover damages.

    B. Genuine issues of material fact remain so as to preclude summary judgment on this second alleged cause of action.

And it is so ordered.